DOOR COUNTY HIGHWAY DEPARTMENT (Door County Highway Commission) and Door County Solid Waste Management System,† Petitioners-Respondents,

v.

Wisconsin DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Equal Rights Division, Respondent-Appellant,

Michael G. JARMAN, Complainant-Co-Appellant.

Court of Appeals

*No. 86–0794. Submitted on briefs December 11, 1986.—Decided February 17, 1987.*

(Also reported in 404 N.W.2d 548.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the respondent-appellant, briefs were submitted by *Bronson C. La Follette,* attorney general of Madison, and *James H. McDermott,* assistant attorney general.

For the complainant-co-appellant, briefs were submitted by *P. Scott Hassett* of *Lawton & Cates, S.C.,* of Madison.

For the petitioners-respondents, a brief was submitted by *James C. Pankratz,* Corporation Counsel for Door County.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The Department of Industry, Labor and Human Relations, and Michael Jarman, appeal a judgment reversing a department decision that found the Door County Highway Commission and its Solid Waste Management System division in violation of Wisconsin's public employee safety and health statute, sec. 101.055, Stats., and the Employees' Right to Know Law, secs. 101.58 to 101.599, Stats. The department and Jarman argue that the trial court erred by concluding that the decision was not supported by substantial evidence and that the department had

exceeded its statutory authority by imposing a $10,000 forfeiture or, in lieu of the forfeiture, requiring the county to install a ventilation booth. The department also contends that the trial court erred by concluding that the department had exceeded its authority by ordering the county to reimburse Jarman for all back pay without deducting for the unemployment compensation he had received. We conclude that the department's latter contention is without merit. However, because the department's decision was supported by substantial evidence and the sanctions it imposed did not exceed its authority, we reverse the judgment.

In 1981, the Door County Highway Commission, through its Solid Waste Management System, began operating a landfill site and baler facility. The baling facility was designed to increase the amount of solid waste that could be deposited in the landfill site by compacting the waste into cubes and binding it with wire. The Department of Natural Resources tentatively approved the baling operation on the condition that the county submit a dust control plan and that the facility not accept bulky wastes, demolition debris, liquid waste, sludges, and other hazardous materials.

In 1982, the county hired Michael Jarman to operate the baler facility. Jarman was supervised by Robert Delorit, the superintendent of Solid Waste Management. In 1985, Jarman refused to return to work claiming that the baling operation emitted toxic fumes and materials. He was ultimately discharged.

Jarman filed a complaint with the department, claiming that he had been wrongfully terminated for exercising his rights under the public employee safety and health statute and the Employees' Right to Know Law. Following a hearing, a department examiner entered the following factual findings.

The baling facility processed hazardous waste including varnish, paint, paint thinner, ammonia, bleach, demolition debris, ether, gas, feron, pesticides, herbicides, and infectious materials. When the waste was compacted, fumes, odors, and dust were emitted into the baler facility.

Jarman had no control over the type of waste that was processed at the facility. Delorit never informed Jarman that there were any restrictions on the types of waste that could be accepted. To the contrary, Delorit told Jarman that everything that went to the landfill went through the baler. The county did not post a notice informing users of the facility that certain materials should be taken directly to the landfill. The county charged more for processing waste through the baler facility than it did for waste deposited directly into the landfill.

After working at the facility, Jarman began to experience health problems. These included nausea, vomiting, diarrhea, headaches, loss of coordination, numbness of limbs, blurred vision, fevers, and chills. On one occasion, Jarman was overcome by the fumes emitted by the baler and lost consciousness.

Jarman became very concerned about the working conditions at the facility. He sealed all openings in the baler that he could. At his request, the county installed a door on the baler chute to help seal the openings. Nevertheless, it was impossible to seal all openings and fumes, dust, and liquids continued to escape.

Jarman contacted several state and federal agencies to request information as to the dangers he was being exposed to and for suggestions to improve the conditions. He also discussed with Delorit possible improvements the county could implement to make

the facility safer. One suggestion was that the county install a glass ventilated booth as other counties had done to isolate the baler operator from the hazardous materials. Delorit stated that such booths were too expensive. Jarman asked for written assurance that certain materials would not go through the baler, but Delorit responded that everything went through the baler.

At Jarman's request, Delorit supplied him with a respirator. The written instructions that came with the respirator indicated that different types of filters were needed for different types of fumes and dust. However, Delorit did not give Jarman these instructions or instruct him as to the respirator's proper use and limitations. Jarman discovered that the respirator was ineffective to filter the fumes and dust to which he was exposed. The respirator was not cleaned or disinfected regularly nor stored in a sanitary place.

Richard Brandt, an industrial hygienist, conducted an inspection of the baler facility. In a report to the county, Brandt noted that the baling process created dust that had a potential of entering the breathing zone of the employee operator. With the report, he enclosed information regarding asbestos so the county would understand why this hazardous material could not be compressed in the employee's presence. He also noted that infectious materials should be taken directly to the landfill.

Brandt also informed the county that issuing Jarman a respirator did not relieve the county of its responsibility pertaining to the types of materials that were processed at the facility. He noted that if the county required the baler operator to use the respirator, the county must train the operator to use it correctly. Brandt enclosed a copy of the OSHA re-

quirements for respirator protection. He also noted that the only way to guarantee that the operator was exposed to less than the permissible limits of airborne contaminants was to enclose the operator in a control room supplied with filtered fresh air. Additionally, Brandt's report informed the county that pursuant to sec. 101.58, Jarman had a right to know if he was being exposed to hazardous substances and the proper procedures for handling, cleanup, and disposal of these substances.

Before his discharge, Jarman informed Delorit that he would not return to work until he was provided with the proper protective equipment or until he was assured that certain materials would not be sent through the baler. In response to Jarman's questioning, Delorit admitted that the county had not complied with the DNR's requirement that the county submit a dust control plan. Jarman's refusal to return to work was reasonable because he believed the baling operation presented a danger of serious bodily injury or death. Specifically, he believed that asbestos, a known carcinogen, was being compressed in the baler, and this caused asbestos fibers to become airborne.

The county did not advise Jarman, nor post a notice at the facility, of the protective measures and emergency procedures that should be taken for exposure to hazardous substances. The county did not provide him with adequate protective equipment. Additionally, the county failed to train Jarman regarding the handling of hazardous substances and the safety precautions or emergency procedures to be taken. The county also failed to notify him of his rights under the public employee safety and health statute.

Based upon its findings, the department concluded as a matter of law that Jarman had been discriminated against for exercising his rights protected under the public employee safety and health law, sec. 101.055. The department also concluded that Jarman was not afforded his rights under the Employees' Right to Know Law, sec. 101.58, et seq., and that the county's failure to do so was willful.

To remedy the violations, the department ordered the county to reinstate Jarman with back pay. The department also ordered that Jarman need not accept reinstatement until the county installed a ventilation booth that would provide fresh air and isolate him from the toxic fumes and material emitted by the baler. Additionally, the department imposed a $10,000 forfeiture for the willful violation of Jarman's rights under sec. 101.58, but this forfeiture was to be waived if the county installed the booth.

The trial court determined that the department's conclusion that Jarman had not been afforded his rights under sec. 101.58, et seq., was not supported by substantial evidence. The court based this determination on two grounds: The department's failure to identify the specific provision of sec. 101.58, et seq., which the county had violated, and Jarman's failure to provide the county with a written notice that he believed he was being exposed to hazardous substances and requesting an inspection. The court also determined that the evidence was insufficient to support the department's conclusion that the county, by discharging Jarman, had discriminated against him for exercising his rights under sec. 101.055 and reasonably refusing to perform his duties. The court noted that the department did not support this

conclusion by specifically finding that hazardous materials were present at the baling site.

The trial court concluded that no reasonable view of the evidence could support the department's finding that the county had willfully violated Jarman's rights under sec. 101.58, et seq. The court noted that Jarman had failed to give written notice of any complaint, that the department did not find that hazardous materials were present, and that the county had taken certain protective measures.

Additionally, the court concluded that because the county had not willfully failed to afford Jarman his rights, the department was without authority to impose a $10,000 forfeiture under sec. 101.599(3)(b), Stats. The court also determined that the department had exceeded its authority by ordering the county to install a ventilation booth in lieu of the forfeiture because no evidence was presented that a hazardous situation existed or that the booth would correct the situation if it did exist. The court also determined that the department had exceeded its authority by requiring the county to pay Jarman his back wages without deducting the unemployment compensation payments he had received. The court noted that this would result in Jarman's receiving double compensation.

We conclude that certain rights afforded under sec. 101.58, et seq., are not dependent upon an employee first filing a written request. We agree with the department and Jarman that the trial court erred by concluding that the department's decision was unsupported by substantial evidence.

We apply the same standard of review as the trial court under sec. 227.57, Stats. *Gilbert v. State,* 119 Wis. 2d 168, 194, 349 N.W.2d 68, 79–80 (1984). A court will neither substitute its judgment for that of an

administrative agency nor disturb the agency's findings of fact if it is supported by substantial evidence. Section 227.57(6), Stats. Substantial evidence includes such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gilbert,* 119 Wis. 2d at 195, 349 N.W.2d at 80 (quoting *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979)).

Questions of law, however, are reviewable ab initio. Section 227.57(5), Stats. Nevertheless, a reviewing court will give due weight to an agency's interpretation on a question of law if the agency applied its "experience, technical competence and specialized knowledge." Section 227.57(10), Stats.

A determination involving the interpretation of a statute is a question of law reviewed independently without deference to the trial court's decision. *P.A.K. v. State,* ¹19 Wis. 2d 871, 876, 350 N.W.2d 677, 680 (1984). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 878, 350 N.W.2d at 681. In making this determination, a court first looks to the language of the statute itself. *Id.* If the language is unambiguous, no judicial rule of construction is permitted, and a court must implement the legislature's intent by giving effect to the statute's plain meaning. *City of Milwaukee v. Linder,* 98 Wis. 2d 624, 632, 297 N.W.2d 828, 832 (1980).

In enacting certain provisions of the Employees' Right to Know Law, the legislature intended to impose certain unconditional duties on the employer.

Section 101.581(1) states:

An employer who uses, studies or produces a toxic substance, infectious agent or pesticide shall post in every workplace at the location where notices to employes are usually posted a sign which informs employes that the employer is required, upon request, to provide an employe or employe representative with all of the following:

(a) The identity of any toxic substance or infectious agent which an employe works with or is likely to be exposed to.

(b) A description of any hazardous effect of the toxic substance or infectious agent.

(c) Information regarding precautions to be taken when handling the toxic substance or infectious agent.

(d) Information regarding procedures for emergency treatment in the event of overexposure to the toxic substance or infectious agent.

(e) Access to the information contained on the label of any pesticide with which the employe works or to which the employe is likely to be exposed.

Section 101.597(1) states in part:

[P]rior to an employe's initial assignment to a workplace where the employe may be routinely exposed to any toxic substance, infectious agent or pesticide, an employer shall provide the employe with an education or training program under sub. (5)(a) or (c). The employer shall provide additional instruction whenever the employe may be routinely exposed to any additional toxic substance or infectious agent.

The plain meaning of sec. 101.581(1) is to require an employer to post a sign informing employees of their right to know of the presence of hazardous substances in the workplace. Equally unambiguous is the sec.

101.597(1) requirement that an employer educate and train an employee who is routinely exposed to such substances.

The employer's obligations under secs. 101.581 and 101.597 are absolute and unconditional. These statutes do not require that an employee first file a written request with an employer before invoking his rights. Other portions of the Employees' Right to Know Law do contain a written notice requirement. Sections 101.583(1)(b)1 and (2); 101.585(1), Stats. The inclusion of the written notice requirement in those provisions demonstrates the legislature's consideration of that requirement. The absence of that requirement in secs. 101.581 and 101.597 indicates an unconditional obligation to comply with the statutes' provisions. The use of the term "shall" within these statutes also indicates that the employer's obligation is mandatory. *See City of Wauwatosa v. Milwaukee County,* 22 Wis. 2d 184, 191, 125 N.W.2d 386, 389 (1963).

The county maintains that it is not an employer within the meaning of sec. 101.581 because it does not "produce" toxic or hazardous substances. The county argues that the term "produces" within the statute should be defined as to engage in a manufacturing process that creates a hazardous end product. We disagree.

Section 101.581 is clear and unambiguous. If a statute is unambiguous, a court must implement the legislature's expressed intent by giving the statutory language its ordinary and accepted meaning. *Linder,* 98 Wis. 2d at 632, 297 N.W.2d at 832; sec. 990.01(1), Stats. Absent statutory definition, the ordinary and

accepted meaning of a word can be established by reference to a recognized dictionary. *State v. Kay Distributing Co.,* 110 Wis. 2d 29, 35, 327 N.W.2d 188, 192 (Ct. App. 1982). "Produce" is defined as to manufacture, bring forth, yield, create, cause to exist or accrue. Webster's New World Dictionary 1134 (2d ed. 1980). This definition demonstrates that "produces" does not apply only to a manufacturing process. To the contrary, it indicates that a hazardous substance need not be the end product of a manufacturing process but, rather, that merely causing such substances to exist in the workplace is sufficient.

We conclude that "produces" as it appears with sec. 101.581 means to create, bring forth, or cause hazardous substances to exist in the workplace. The precise nature and content of this legislation supports this conclusion. The Employees' Right to Know Law, is a broad and comprehensive statutory scheme designed to protect a public employee's health, safety, and welfare. This legislation ensures that employees receive adequate information and training necessary to protect them. Thus, the legislation is remedial in nature and must be read broadly to effect its purpose. *Central National Bank v. Dustin,* 107 Wis. 2d 614, 619, 321 N.W.2d 321, 323 (Ct. App. 1982); 82 C.J.S. *Statutes* sec. 388 (1953).

The department found that the county's baling facility was processing hazardous materials including pesticides, herbicides, and infectious materials. The department's findings also indicate that the baler facility was accepting asbestos, a known carcinogen and toxic substance. Section 101.58(2)(j)1, Stats.; 29 C.F.R. sec. 1910 sub. Z (1986). These findings are

supported by the record. The compacting of these materials during the baling process, released hazardous and toxic substances into the workplace. Accordingly, we conclude that the county caused hazardous substances to exist in the workplace and is therefore subject to sec. 101.581.

The trial court also concluded that the department's conclusion that the county had willfully violated Jarman's rights under sec. 101.58, et seq., was unsupported by substantial evidence because the department failed to specify the exact provision violated.

It is undisputed that the county failed to comply with sec. 101.581 and post a sign advising employees of their right to know of the existence of hazardous materials in the workplace. The department stated that the county "did not post notices at the baler facility to inform the operator what safety precautions and emergency procedures should be utilized to protect the operator's personal safety." It is reasonable to infer from this finding that the department was referring to sec. 101.581. There is no requirement that a departmental decision be entered with exacting specificity. Section 227.47, Stats.

The department found that the county did not comply with sec. 101.597 and provide Jarman with an education or training program to ensure his safety. The department stated that the county "did not train him in recognizing and dealing safely with such substances" and then refers to sec. 101.597. This finding is supported by the record. It is true that the county did supply Jarman with a respirator. This equipment was inadequate, however, and proper instructions in its use were not given.

The department also found that the county failed to notify Jarman of his rights under sec. 101.055. Section 101.055(7)(d) provides:

> A public employer shall notify its employees of their protections and rights under this section by posting a summary of these protections and rights in the place of employment where notices to employees are usually posted.

Two of those rights granted are the employee's right to request a department inspection of a workplace if the employee believes a hazardous situation exists and the right to reasonably refuse to work in such a situation. Section 101.055(5) and (8), Stats. The county did not comply with the posting of rights requirement of sec. 101.055.

■

We conclude that the department correctly determined that the county violated secs. 101.055, 101.581, and 101.597 and thereby failed to afford Jarman his rights under those provisions. We must next determine whether the county's failure to comply with secs. 101.581 and 101.597 was willful and whether the penalty imposed exceeded the department's authority.

■

The record amply supports the department's conclusion that the county willfully failed to comply with secs. 101.581 and 101.597. Brandt informed the county that under sec. 101.58 Jarman had a right to know if he was being exposed to toxic substances. He also noted that the county was not relieved of its responsibility pertaining to Jarman's safety simply by issuing him a respirator, but that the county must train Jarman in its use. Additionally, Jarman repeatedly stated his concerns regarding the processing of

the hazardous materials, that he had a right to know what he was being exposed to, and inquiring whether the respirator was properly maintained. Because the county persistently failed to comply with secs. 101.58, et seq., after numerous complaints had been made and it was made aware of its obligations under those provisions, we conclude that the county's continued disregard for Jarman's welfare and his rights afforded under those provisions was willful.

Section 101.599, Stats., provides in part:

(2) The department shall issue its decision and order within 30 days after hearing. If the department finds that an employer or agricultural employer has violated s. 101.583, 101.585, 101.586, 101.595 or 101.597(1) or (2), it may order the employer or agricultural employer to take such action as will remedy the effects of the violation, including instituting an education or training program, providing the requested information, reinstating an employee or providing back pay to an employee.

(3) Civil forfeiture.

(b) Any person who wilfully violates or exhibits a pattern of violation of ss. 101.58 to 101.599 or an order of the department issued under ss. 101.58 to 101.599 shall forfeit not more than $10,000 for each violation.

Because the county's violation of secs. 101.581 and 101.597 was willful, the department was empowered under sec. 101.599(3)(b) to impose a $10,000 forfeiture. It is within the department's discretion to abate the forfeiture if the county installs a ventilation booth. An administrative agency has those powers expressly conferred or necessarily implied by statute under

which it operates. *City of Appleton v. Transportation Comm'n,* 116 Wis. 2d 352, 357–58, 342 N.W.2d 68, 71 (Ct. App. 1983).

Section 101.599(2) authorizes the department to take "such action as will remedy the effects of the violation" of sec. 101.597(1) or (2). Following the inspection of the baler facility, Brandt reported that the only way to guarantee that an employee will be exposed to less than permissible exposure limits is to isolate the employee in a control room supplied with filtered air. Thus, the department's order imposing a $10,000 forfeiture or, alternatively, requiring the county to install the booth, is an appropriate incentive for the county to remedy the violation. The county is given the choice of paying the forfeiture or applying it towards the cost of installing the booth.

The department was also empowered under sec. 101.599(2) to order Jarman's reinstatement with back pay for the county's violation of sec. 101.597(1). In addition, sec. 101.599(2) authorizes the department to take such steps as are necessary to remedy the effects of violation. The county's failure to educate and train Jarman in the use of equipment that would ensure his safety was a critical factor in Jarman's decision not to return to work. Because the county's violation of sec. 101.597 was directly responsible for Jarman's ultimate termination, reinstatement with back pay is an appropriate remedy.

Additionally, the department concluded that by discharging Jarman, the county had discriminated against him for exercising his rights under sec. 101.055(8)(a), that is, reasonably refusing to work in a

hazardous environment. Section 101.055(8)(c) authorizes the department to order reinstatement with back pay for such discrimination. *See also* sec. 101.595, Stats.[1] Jarman was working in a hazardous situation but had received only minimal training and inadequate safety equipment to cope with this situation. His requests for further information went unanswered. The sole reason for his discharge was his refusal to return to work under the existing hazardous conditions. Under these circumstances, Jarman's action was reasonable, and the department was empowered to order his reinstatement with back pay.

The department ordered that Jarman be reimbursed his back pay without deducting the unemployment compensation benefits he had received. The effect of this order is to overcompensate Jarman

---

[1] We note that the relationship between secs. 101.581 and 101.595 is ambiguous. Section 101.581 requires an employer to post a sign advising an employee that upon request, the employer must provide the employee with certain information regarding hazardous substances in the workplace. Section 101.581 does not require that the employer inform the employee that the request for information must be made in writing. Section 101.595 both authorizes an employee to refuse to work if the employer has failed to disclose requested information and protects the employee if the employer takes retaliatory action and discharges the employee for exercising his rights under secs. 101.58 to 101.599. The language of sec. 101.595, however, appears to require that the employee first file a written request for information with the employer before the protections of that statute are triggered. Thus, the absence of a directive in sec. 101.581 requiring the employer to notify an employee that a written request for information must be made, appears to be inconsistent with the provisions of sec. 101.595. For purposes of this review, we need not address this inconsistency. It is for the legislature to address this matter and take any necessary curative action.

because he retains the benefits he received and is also reimbursed in full for all back pay. The department did not articulate any justifiable reason for entering such an order. In the absence of such a reason, the department abused its discretion. Accordingly, we affirm that portion of the trial court's judgment that found that the department had exceeded its authority by ordering that Jarman recoup all back pay without deducting the unemployment benefits he had received.

*By the Court.*—Judgment affirmed in part and reversed in part. Costs to appellants.