PARK BANK-WEST, Plaintiff-Appellant,

v.

Sandra M. MUELLER, Personal Representative of the Estate of Arthur James Mueller, and Sandra M. Mueller, Defendants-Respondents

Court of Appeals

*No. 88–2282. Submitted on briefs May 2, 1989.—Decided June 21, 1989.*

(Also reported in 444 N.W.2d 754.)

For the plaintiff-appellant the cause was submitted on the briefs of *Poulos, Sengstock, Wilkoski & Budny, S.C.,* with *Paul D. Christensen* and *Theodore J. Poulos* of counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Michael, Best & Friedrich,* with *F. William Haberman* of counsel, of Milwaukee.

For the Wisconsin Bankers Association, the cause was submitted on the amicus curiae brief of *Boarman,*

*Suhr, Curry & Field,* with *John E. Knight, James E. Bartzen,* and *Carl J. Rasmussen,* of counsel, of Madison.
Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.  Park Bank West (Bank) appeals from a judgment that granted summary judgment to Sandra M. Mueller (Sandra) individually and as personal representative of the estate of her late husband, Arthur James Mueller (James).

The facts are undisputed. On July 15, 1987, James borrowed $25,000 from the Bank, as evidenced by an unsecured Business Note. At the same time, James also signed a Declaration of Business Purpose Statement which indicated the loan was for home improvement. The Declaration additionally contained this statement:

> "I am married and the obligation described above is being incurred in the interest of my marriage or family."

On July 13, 1987, the Bank mailed the original note to James at his Shorewood residence where his spouse, Sandra, also resided. However, the letter was only addressed to James. James died on March 26, 1988. In a letter of May 23, 1988, the Bank informed Sandra of the existence of the note and threatened to sue her if she did not make payment arrangements. The balance due as of May 17, 1988, was $15,123.54. Sandra alleged that she was unaware of the note until she received the May 23 letter. The Bank sued Sandra personally and in her capacity as personal representative of the estate. The trial court held that because the Bank failed to give notice as provided by sec. 766.56(3)(b), Stats.[1] (hereinaf-

---

[1]Section 766.56(3)(b), Stats., provides:

> (b)   Except as provided in par. (c), if a creditor extends credit to a spouse in a credit transaction governed by chs. 421 to 427 and

478

ter sub. (b)), to Sandra, it was barred from any recovery against Sandra's interest in marital property. It also determined that in any event, no marital property was available to satisfy the claim. It entered a judgment dismissing the complaint.

The issue on appeal is whether the Bank's failure to give notice of the loan to Sandra, the nonapplicant spouse, pursuant to sub. (b), prevents the Bank from recovering the balance of the loan from marital property held by Sandra. We conclude that despite the Bank's failure to give notice, the loan is viable against marital property held or managed and controlled by Sandra, as well as any individual property in the estate of the applicant spouse, James.

■■■■■

Appellate courts are required to follow the same methodology as trial courts in reviewing orders for summary judgment. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The first step is to examine the pleadings to determine whether they state a claim for relief. *Id.* If they do, and if the answer joins issue, and a *prima facie* case for summary judgment has been made, the second step is to determine whether any issues of material fact exist. *Kimpton v.*

the extension of credit may result in an obligation described under s. 766.55(2)(b), the creditor shall give the nonapplicant spouse written notice of the extension of credit before any payment is due. The notice requirement may be satisfied by providing a copy of the instrument, document, agreement or contract evidencing the obligation to pay or any required credit disclosure which is given to the applicant spouse, or by providing a separate writing briefly describing the nature of the credit extended. Notice is considered given on the date it is mailed to the address of the nonapplicant spouse provided to the creditor by the applicant spouse. If the applicant spouse informs the creditor that the spouses reside at the same address, the notice may be enclosed in an envelope addressed to the nonapplicant spouse or both spouses.

479

*School Dist. of New Lisbon,* 138 Wis. 2d 226, 230–31, 405 N.W.2d 740, 742 (Ct. App. 1987). Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show that there are no material issues of fact, and that the movant is entitled to judgment as a matter of law. Sec. 802.08(2), Stats.; *Green Spring Farms,* 136 Wis. 2d at 315, 401 N.W.2d at 820. The purpose of summary judgment is to determine whether a legal dispute can be resolved short of trial. *Bulgrin v. Madison Gas & Elec. Co.,* 125 Wis. 2d 405, 407–08, 373 N.W.2d 47, 49 (Ct. App. 1985).

The Bank argues that the unambiguous terms of sub. (b) provide no sanction for the failure of a creditor to provide written notice to the nonincurring spouse, except for the $25 forfeiture delineated in sec. 766.56(4)(b).[2] The Bank concedes that it never gave Sandra, the nonapplicant spouse, notice, pursuant to sub. (b). Regardless, it contends that this failure did not affect its rights to access marital property to satisfy the debt incurred by James.

Sandra argues that failure to give sub. (b) notice bars application of the note to marital property held by her. The parties agree that because Sandra did not sign the note, her individual property is not available. In any

---

[2]Section 766.56(4)(b) and (c), provide:

(b)   Except as provided in par. (c), a creditor that fails to give notice under sub. (2)(b) is liable to each applicant spouse in the amount of $25. Except as provided in par. (c), a creditor that fails to give notice under sub. (3) is liable to the nonapplicant spouse in the amount of $25.

(c)   A creditor is not subject to a penalty under par. (b) if the creditor shows by a preponderance of the evidence that failure to give notice was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

event, Sandra contends that because no marital property exists and because, as asserted in her uncontroverted affidavit on summary judgment, James's estate is insolvent, the Bank cannot recover. She also argues that securities in her name were either predetermination date property,[3] or gifts to her, and that all income, including wages, realized since January 1, 1986, were expended for family purposes.

## WISCONSIN CONSUMER ACT

The Wisconsin Bankers Association (WBA) argues in its amicus curiae brief that no notice whatsoever was required. WBA asserts that the Business Note was not a credit transaction governed by the Wisconsin Consumer Act, chs. 421 to 427, Stats., and hence, not included in the notice requirement of sub. (b).

We decline to address this issue because it was not raised or argued in the trial court. *See Glamann v. St. Paul Fire & Marine Ins. Co.,* 140 Wis. 2d 640, 659, 412 N.W.2d 522, 530 (Ct. App. 1987). The pleadings did not raise this issue, nor did the summary judgment affidavits or trial briefs. It was not argued on summary judgment. Although the trial court's decision assumed a consumer credit transaction, it did not decide that precise issue. The Bank's brief on appeal does not address the issue. Furthermore, how James used the loan proceeds is not revealed in the record. Under these circumstances, the parties have waived our consideration of the issue. *See In re Estate of Bilsie,* 100 Wis. 2d 342, 346 n. 2, 302 N.W.2d 508, 512 n. 2 (Ct. App. 1981). This case is

---

[3]The determination date is January 1, 1986, or the date the Wisconsin Marital Property Act became effective, since Sandra and James' date of marriage preceded January 1, 1986. *See* sec. 766.01(5)(c), Stats.

decided on the unchallenged assumption by the parties and the trial court that the loan was an unsecured consumer credit transaction.

## NOTICE

The Bank concedes that Sandra's predetermination date property and her individual property cannot be reached for the obligation. Sandra asserts, however, that the Bank can also not reach marital property held by her because of its failure to give her sub. (b) written notice. We disagree.

The application of a statute to an undisputed set of facts presents a question of law. *Rubi v. Paige,* 139 Wis. 2d 300, 306, 407 N.W.2d 323, 325-26 (Ct. App. 1987). An appellate court must decide a question of law independently and without deference to the trial court. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). Because reasonable persons could not disagree as to the meaning of sec. 766.56, Stats., we conclude that it is not ambiguous. *See Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 196, 405 N.W.2d 732, 734 (Ct. App. 1987). "If a statute is unambiguous, a court must implement the legislature's expressed intent by giving the statutory language its ordinary and accepted meaning." *Door County Highway Dep't v. DILHR,* 137 Wis. 2d 280, 293, 404 N.W.2d 548, 554 (Ct. App. 1987).

In this particular credit transaction, sub. (b) required the Bank to notify the nonincurring spouse, Sandra, of the extension of credit "before any payment [was] due." The note was a demand note. The record is devoid of any demand upon James. However, the note requires payment of the first interest installment one

month from the date of the note and monthly thereafter. We conclude that the sub. (b) words, "any payment" includes the interest payment, and that the Bank's duty to notify Sandra of the extension of credit to her husband arose prior to August 15, 1987.

Sandra's argument that failure of the creditor to give sub. (b) notice to her as the nonincurring spouse bars the creditor from proceeding against marital property held by her and subject to her management or control, is overly ambitious and not in accord with the statutory framework. The purpose of sub. (b) is to give a nonincurring spouse information about the debt status of the marital estate.

> Because a creditor may reach the couple's marital property when it extends family purpose credit, the notice requirement serves to inform the nonapplicant spouse about obligations for which all marital property is available for debt satisfaction upon default.
>
> The required notice is intended to make the nonapplicant spouse aware of family purpose obligations for which the spouses' marital property is available for debt satisfaction. It is particularly important for the nonapplicant spouse to have this information when that spouse considers or applies for credit in the future. Knowledge of the extension of credit also is necessary if the nonapplicant spouse wishes to exercise that spouse's rights under WMPA [the Wisconsin Marital Property Act], including the right to terminate the account to the extent that the credit granted has not been used already.

Weisberger & Wolek, *WMPA & Credit,* Wis. Law. 18, 72 (April, 1989).

Because the obligation was incurred during marriage, a presumption arose that it was in the interest of

the marriage or family. Sec. 766.55(1), Stats. James's written statement concerning the purpose of the obligation constituted conclusive evidence that it was incurred in the interest of the marriage or family. *Id.* The Bank's failure to give notice, considering its informational character, did not affect the presumption or controvert the evidence. The only penalty provided by statute is found in sec. 766.56(4)(b), Stats., assessing a $25 liability against the creditor. This lenient charge displays a legislative purpose that the notice is informational and not intended to limit a creditor's right in the marital property. The trial court erred in concluding that the Bank's failure to give the nonincurring spouse notice defeated the Bank's rights in the marital property. Where the legislature has provided a sanction, though it may appear meager, a court is not free to substitute its judgment by providing additional penalties. *See Wisconsin Bankers Ass'n v. Mutual Sav. & Loan Ass'n,* 96 Wis. 2d 438, 454, 291 N.W.2d 869, 877 (1980).

However, we note that as a result of the Bank's disregard for its duty to Sandra, its only statutorily imposed liability was the payment of a $25 fine to her. Such a penalty sounds in absurdity, given the fact that Sandra was denied an opportunity to protect her rights and interests. If Sandra had known of the indebtedness, she could have objected to it, or monitored the use of the funds, or participated in their repayment. Also, Sandra could have sought an interspousal remedy. *See* sec. 766.55(1). Section 766.55(1), Stats., does establish that James' signature on the family purpose statement is "conclusive evidence" that the debt was incurred in the interest of the marriage or family. However, the existence of the family purpose statement "[did] not affect any interspousal right or remedy." Sec. 766.55(1). Furthermore, the existence of the debt could greatly affect

Sandra's ability to secure credit. Knowledge of James' loan from the Bank was/is a significant factor in Sandra's financial decision-making.

Thus, the Bank is entitled to repayment of the loan it extended to James, and may access Sandra's interest in their marital property to cure the indebtedness, even though the Bank violated the law and never informed Sandra that said interest was placed in jeopardy. The precedential implications of this decision are clear, and we suggest a reevaluation of sec. 766.56(4), Stats., by the legislature.

## DEATH OF INCURRING SPOUSE

Relying on Sandra's affidavit in support of summary judgment, the trial court concluded that in any event, because James' estate was insolvent, and because she possessed no marital assets, the action should be dismissed. Section 766.55(8), Stats., provides that upon the death of a spouse, "property is available for satisfaction of obligations as provided in s. 859.18[, Stats.]" Section 859.18(2) provides:

> At the death of a spouse, property, including the proceeds of or property exchanged for that property, that but for the death of the spouse would have been available under s. 766.55(2) for satisfaction of an obligation continues to be available for satisfaction, except as provided in subs. (3) to (5).

The issue before the trial court was what property would have been available to satisfy the obligation "but for" James' death. This is answered by sec. 766.55(2),[4] Stats.,

---

[4]Section 766.55(2), Stats., provides that:

> (2)  After the determination date all of the following apply:
> . . .

which defines available property. Section 766.55(2)(b) includes sec. 766.31 marital property, as well as James' individual property. Under sec. 766.31(4), Stats., marital property includes spousal post-determination date wages, dividends from individually owned securities and rents, if any, from the jointly-held homestead. Whether certain property or income qualifies as marital property usually presents a factual issue which cannot be resolved on summary judgment. *See Poynter v. Johnston,* 114 Wis. 2d 439, 451, 338 N.W.2d 484, 490 (1983). The trial court erred in confusing the classification of an obligation with the classification and availability of property to satisfy it. Sandra's conclusary affidavit that none of the property she holds qualifies as marital property, which may be used to satisfy the debt, does not resolve the question of classification of the property. On remand, the trial court will determine, after a hearing, which property, if any, may be classified as marital. Then it will apply such property to the obligation owed to the Bank.

Sandra's affidavit in support of summary judgment did not controvert the Bank's affidavit that $15,123.54 remained due on the note as of May 17, 1988. The Bank was entitled to judgment in that amount on its motion for summary judgment as a marital obligation against James' individual property and the marital property held by James and Sandra at the time of his death.

In summary, we conclude that:

(1) The loan, based on the Business Note and containing a separate written statement of family purpose

---

(b) *An obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse.* [Emphasis added.]

by the incurring spouse, created a marital obligation under sec. 766.55, Stats.;

(2) Failure of the creditor Bank to give sec. 766.56(3)(b), Stats., notice of the obligation to the non-applicant spouse does not prevent the classification of the obligation as marital and does not affect the creditor's right to recover from the marital estate; and

(3) On remand, the trial court will conduct a hearing and make findings of fact as to what marital property, if any, is available to satisfy the judgment.

*By the Court.*—Judgment reversed and cause remanded with directions for further proceedings consistent with this opinion.