The TRUSTEES OF INDIANA UNIVERSITY and Indiana University Alumni Association, Inc., a foreign corporation, Plaintiffs-Respondents,

v.

TOWN OF RHINE, a municipal corporation, Defendant-Appellant.†

Court of Appeals

*No. 91-2595. Submitted on briefs May 29, 1992.—Decided July 29, 1992.*

(Also reported in 488 N.W.2d 128.)

†Petition to review denied.

294

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard Hahn* of *Holden & Hahn* of Sheboygan.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James Bolgert* of *Hayes, Neumann, Humke, Moir & Bolgert, S.C.* of Sheboygan.

Before Nettesheim, P.J., Brown and Snyder, JJ.

SNYDER, J. The Town of Rhine appeals from a judgment which declared tax-exempt certain property located in Wisconsin but owned by Indiana University

and which ordered the town to remit all taxes collected on it. We conclude the trial court correctly construed the tax statute; we affirm.

The facts are not disputed. The property at issue is an approximately nine-acre parcel of land on the shores of Elkhart Lake in the town of Rhine in Sheboygan county. The site, known as Camp Brosius, was established in 1921 as a summer training camp for the university's physical education majors. Camp Brosius has several cottages and cabins, a dining hall, an inn and an annex. The camp also has various recreational amenities, such as boating facilities, a tennis court, a baseball field and other outdoor activity areas. Because most of the buildings are unheated, the camp is used only three months of the year.

The Trustees of Indiana University, organized to hold or own property on behalf of the university, owns Camp Brosius and leases it to the Indiana University Alumni Association, Inc. Both the trustees and the alumni association are Indiana corporations. As rent, the alumni association "agrees to pay for the repairs, maintenance, services, governmental charges, and all other costs associated with Camp Brosius as if [the] Association were the owner," and further that it shall, at its expense, "perform all routine and normal maintenance to the buildings, grounds, and equipment." Among the stated purposes of the alumni association is that it is

> [t]o be organized and operated exclusively for educational and charitable purposes as a nonprofit organization dedicated to advancing the interest of Indiana University . . . and promoting generally this great educational institution.

Anyone may join the alumni association by paying a membership fee, regardless of whether he or she attended the university.

The university's school of physical education uses Camp Brosius each year between approximately May 20 and June 8. During that time, university faculty teach a three-credit course its physical education majors are required to take. Although the alumni association is paid no rent for use of the camp and its facilities for this period, it is reimbursed for any expenses incurred, such as utilities and insurance.

Between approximately June 9 and August 18 each year, the alumni association operates Camp Brosius as a family campground and vacation site which any member of the association may attend. University professors are paid to conduct three hours of classes per week during the camping sessions. Attendance is optional at those classes. In addition, individual and group recreational activities such as swimming, tennis, field trips, sailing, boating and hiking are provided.

Camp Brosius was never on the town's tax rolls until 1988. The trustees paid the 1988 and 1989 taxes under protest and filed claims for refunds of the taxes paid to the town and the county. Taxes for the two years totaled over $43,000. The trustees then filed this lawsuit seeking return of the moneys paid under protest and, implicitly, for a declaratory judgment that the Camp Brosius property is tax-exempt. The trial court concluded that it is exempt under sec. 70.11(3) and (4), Stats., and ordered the town to return the taxes it had collected. The town appeals.

The issue before us requires construction of sec. 70.11(3) and (4), Stats. Statutory construction is a question of law. *Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 803, 440 N.W.2d 329, 332 (1989). Likewise, the application of a statute to an undisputed set of facts presents a question of law. *Park Bank-West v. Mueller*, 151 Wis. 2d 476, 482, 444 N.W.2d 754, 757

(Ct. App. 1989). We decide questions of law independently and without deference to the trial court. *Id.*

Taxation is the rule and exemption from taxation is the exception. *Engineers & Scientists of Milwaukee, Inc. v. City of Milwaukee,* 38 Wis. 2d 550, 553, 157 N.W.2d 572, 574 (1968). Tax exemption statutes are matters of legislative grace and are to be strictly construed against the granting of an exemption. *Pulsfus Poultry Farms,* 149 Wis. 2d at 811, 440 N.W.2d at 335. A strict construction does not mean the narrowest possible reading, however. *Id.* Rather, the statute should be construed in a "strict but reasonable" manner. *Id.* (quoting *Columbia Hosp. Ass'n v. City of Milwaukee,* 35 Wis. 2d 660, 668, 151 N.W.2d 750, 754 (1967)). The party claiming the exemption must show the property is clearly within the terms of the exception and any doubts are resolved in favor of taxability. *Id.*

The appellate issue embraces several subissues. The first is whether the Camp Brosius property is "grounds" of Indiana University within the meaning of sec. 70.11(3)(a), Stats.[1] Section 70.11(3)(a) provides that "[g]rounds of any incorporated college or university, not exceeding 80 acres" is exempt from general property taxes.

The trial court concluded that Camp Brosius is part of the university grounds because the property was not used for a commercial purpose with profit or income as a

---

[1]The trial court and both parties apparently presume that subsec. (a) of sec. 70.11(3), Stats., must be addressed before moving on to the lease provisions of subsec. (b) and the introductory paragraph. Since we conclude that the property at issue here does constitute "grounds" under subsec. (a), we meet the issue as it is presented to us, but we do not determine whether in every lease situation property under sec. 70.11(3) must first be considered "grounds" of the college or university before it will be tax-exempt.

goal. The town argues that "grounds" should be limited to the property surrounding the campus. It asserts that the trial court's conclusion "reaches not only an unreasonable and absurd result, but also sets a very dangerous precedent." It contends that under this construction

> every university or college in the nation, or potentially the world, could own 80 acres of land in Wisconsin, or perhaps even 80 acres of land in every taxation district, and achieve tax exempt status as long as the property was not used for profit. According to the court's rationale, all universities or colleges could own land in the State of Wisconsin, use it as a non-profit vacation resort for their alumni, students and staff and completely escape taxation.

The trustees and alumni association, by contrast, contend that the drafters of the statute could have limited "grounds" to land contiguous to the university proper, but instead chose to limit it only by size. Thus, they conclude that land separated from the main campus still may be considered university grounds as long as it does not exceed eighty acres in area.

We agree. The use made of a property, not its location, determines whether it is subject to taxation or entitled to exemption from taxation. *See State v. City of Madison,* 55 Wis. 2d 427, 432-33, 198 N.W.2d 615, 618-19 (1972). Non-adjoining property may constitute "grounds" of a college or university. *See* 42 Op. Att'y Gen. 149, 151 (1953). We can envision numerous scenarios in which a college or university might, for a particular activity or course of study, own property which does not adjoin the main campus but which nonetheless might be considered, given the proper use, as part of its grounds—an arboretum, for example, or agricultural land and its buildings, or an athletic field or stadium. In a

similar manner, Camp Brosius serves as an off-campus site for the university to conduct a mandatory portion of its physical education curriculum. We conclude that Camp Brosius is on the grounds of Indiana University within the meaning of the statute.

Our inquiry does not stop there, however. The introductory paragraph to sec. 70.11, Stats., provides that property otherwise exempt under that section is not made taxable by leasing it "if the lessor uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both and if the lessee would be exempt from taxation under this chapter if it owned the property."

As rent under the lease with the trustees, the alumni association agrees to pay for "repairs, maintenance, services, governmental charges, and all other costs associated with Camp Brosius as if [the] Association were the owner . . . [and] perform all routine and normal maintenance to the buildings, grounds, and equipment." Thus, the leasehold income plainly is used for maintenance of the leased property.

We next examine the second prong, whether the alumni association would be exempt from taxation under ch. 70, Stats., if it owned Camp Brosius. The town contends that the alumni association would not be exempt from taxation if it owned the camp because it is neither engaged in traditional education nor serves an educational function.

Resolution of this portion of the issue requires construction of sec. 70.11(4), Stats., which provides in relevant part:

Property exempted from general property taxes is:
. . ..

301

(4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively by . . . educational or benevolent associations . . . whether or not contiguous to and a part of other property owned and used by such associations . . . but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit.

To qualify as an educational association under sec. 70.11(4), Stats., an organization must be a nonprofit organization substantially and primarily devoted to educational purposes. *International Found. of Employee Benefit Plans, Inc. v. City of Brookfield*, 95 Wis. 2d 444, 453, 290 N.W.2d 720, 724 (Ct. App. 1980). If the educational function is merely incidental to nonexempt activities or if the facts as a whole show that the educational function is incidental to activities which serve the personal interests of the organization's directors or members, an exemption will not be granted. *Id.*

Moreover, the organization must be devoted to "traditional" educational activities. *Id.* at 453, 290 N.W.2d at 725. "Traditional" educational activities need "not be restricted to a formal academic curricula in a formal school setting in ivy-covered halls." *Id.* at 456, 290 N.W.2d at 726. They must, however, include as a main ingredient "traditional charitable objectives," which means they must provide

systematic instruction, either formal or informal, directed to an indefinite class of persons . . . which benefits the general public directly and must be the type that would ordinarily be provided by the government or that would in some way lessen the burdens of the government.

302

*Id.*

The alumni association is recognized as an educational and charitable organization by both Indiana and the federal government and is accorded tax-exempt status by both taxing entities. We conclude that the alumni association also qualifies as an educational association under Wisconsin law.

There can be no doubt that Indiana University would qualify as an educational institution. The university's close interrelation with the alumni association persuades us that the association, too, is an educational association under sec. 70.11(4), Stats. The university and the alumni association share legal services, the payroll system, clerical employees and office equipment, and the university pays most of the salaries of association employees. Also, the lease expressly states that the university retains rights of usage at times other than during the camping season, further evidence that the alumni association is integrally connected to the university. In addition, the association's express purpose, as stated in its articles of incorporation, is

> [t]o be organized and operated exclusively for educational and charitable purposes as a nonprofit organization dedicated to advancing the interest of Indiana University, lessening the burdens of Indiana University and the State of Indiana, and promoting generally this great educational institution, our alma mater.

This lease also affirms the association's duty to "operate in such manner that it be of continuing service to [the] University" and states that operating the camp assists in fulfilling that objective. Thus, the university might be analogized to a "parent corporation" which assigns to

the association, its "wholly owned subsidiary," the management of the camp on behalf of the university.

As the trial court noted, the alumni association is substantially and primarily devoted to educational purposes because it contributes to the advancement of the university through "communications and programs." The association publishes and distributes a newsletter from each school, campus and department within the university, and an alumni magazine which "advertises the various areas of university study and contains articles authored by Indiana University faculty." It also promotes a "mini-university" program held each June during which students and alumni may enroll in any of over one hundred courses taught by university faculty; solicits for academic scholarships; sponsors fora on higher education; and underwrites and promotes numerous seminars, conferences and workshops conducted by various schools of the university.

We also conclude that educational activities conducted at Camp Brosius are sufficiently "traditional" to qualify the property for exemption from taxation. The university's school of physical education uses the camp for mandatory credit courses which are taught by university faculty. Because the buildings are unheated, the camp cannot be used year-round. Thus, these three weeks of mandatory classes represent nearly twenty-five percent of the total time Camp Brosius is used.

During the remainder of the summer session, the camp is used in accordance with the objectives expressed in the lease and the alumni association's articles of incorporation. The site is operated as a family campground and vacation site. Families partake in typical camping activities as well as in both formal and informal educational programs conducted for pay by university professors. Many of the activities are aimed at children.

Other organizations providing such activities in similar settings enjoy a tax-exempt status under sec. 70.11, Stats.[2]

We agree, therefore, with the trial court's conclusion that Camp Brosius is tax-exempt as "grounds" of Indiana University and that the leasing of it to the alumni association did not destroy its tax-exempt status. *See Engineers & Scientists of Milwaukee,* 38 Wis. 2d at 559, 157 N.W.2d at 577 (stating that a professional engineering society's use of a building for meetings of the toastmaster's club, effective speaking classes, explorer's scout post, a travel and adventure film series, and a family film series would not destroy an exemption if one existed because such activities are more clearly educational than the principal functions carried out, *i.e.,* the continuing education of graduate engineers). Accordingly, we conclude that if the alumni association itself owned Camp Brosius, it would be exempt from taxation. We therefore affirm the trial court's determination that the town must return the taxes paid under protest.

*By the Court.*—Judgment affirmed.

---

[2]*See, e.g.,* sec. 70.11(10), (10m), (11) and (12), Stats., providing exemptions for camps run by the YMCA, YWCA, Lions Club, religious groups, Boy Scouts, Girl Scouts and Boys' Clubs of America.