Timothy WRASE and Barbara Wrase, Plaintiffs-Appellants,

v.

CITY OF NEENAH, Defendant-Respondent.

Court of Appeals

*No. 97–3457. Submitted on briefs March 10, 1998.—Decided May 13, 1998.*

(Also reported in 582 N.W.2d 457.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Philip A. Munroe* of *Di Renzo and Bomier* of Neenah.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James B. Gunz*, city attorney.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. Timothy and Barbara Wrase appeal from a judgment dismissing their complaint in favor of the City of Neenah. The Wrases claim that the City assessed their 1996 property tax in excess of its fair market value by failing to give proper credit for a property exemption under § 70.11(13m), STATS. Because the reduction proposed by the Wrases is neither specifically permitted, nor directed, by § 70.11(13m), we affirm the judgment.

The following facts are not in dispute. In 1994, the Wrases purchased the Mahler estate on the shores of Lake Winnebago. They subsequently developed and sold off approximately two-thirds of the property. They kept a five-acre parcel which they intended to develop as their personal residence. The parcel is zoned R–1, single family residence, and it contains 320 feet of frontage and an abandoned quarry that is unbuildable.

In 1995, the Wrases learned that the shoreline might contain an archaeological site and authorized a study of the property. The study disclosed "remarkable . . . archeological deposits of extreme importance" that included the remains of a 350-year-old Native American village. The Wrases granted an Archaeological Preservation Covenant to the State Historical Society. The covenant consists of three-quarters of an acre of waterfront property including all 320 feet of shoreline.

The terms of the covenant are substantial and perpetual.

In 1995, before the Wrases signed the covenant, the five-acre lot was assessed at $394,500. In 1996, the assessment for the lot, excluding the land subject to the covenant, was set at $268,400. The assessor divided the lot into three sections, not including the covenanted land. The value of the buildable section, plus the area with the proposed road, tennis court and garage, was unchanged from 1995. The remaining two sections were valued according to the land value formula for waterfront properties in the Wrases' neighborhood. The assessor considered the values of comparable sales as well. The assessor did not value the covenanted land. After an appearance by Timothy, the board of adjustment lowered the assessment for the noncovenanted land to $180,000.

The Wrases paid the requisite taxes and then filed a small claims action contending the assessment was excessive. *See* § 74.37, STATS. The Wrases' position was that the five acres should be valued as a whole and then the value of the parcel subject to the covenant—using the same formula used to value neighboring waterfront parcels—should be subtracted from the total property value under § 70.11(13m), STATS. The court commissioner agreed with the Wrases. The City of Neenah sought a trial de novo. The circuit court first noted that even though § 70.11(13m) requires that the protected parcel be exempt from taxation, that does not necessarily mean that the total property value will be reduced. The court specifically found that the intent of the statute was met—the property was protected and it was exempted from the tax rolls. Accordingly, the court dis-

missed the Wrases' complaint and entered judgment in favor of the City. The Wrases appeal.[1]

■ The issue before us involves the construction of § 70.11(13m), STATS. Statutory construction is a question of law. *See Trustees of Indiana Univ. v. Town of Rhine*, 170 Wis. 2d 293, 298, 488 N.W.2d 128, 130 (Ct. App. 1992). "Likewise, the application of a statute to an undisputed set of facts presents a question of law." *Id.* We decide questions of law independently and without deference to the trial court. *See id.* at 299, 488 N.W.2d at 130.

■ The property exemption statute at issue in this case, § 70.11, STATS., provides in relevant part:

> **Property exempted from taxation.** The property described in this section is exempted from general property taxes . . . . Property exempted from general property taxes is:
>
> . . . .
>
> **(13m)** ARCHAEOLOGICAL SITES. Archaeological sites and contiguous lands identified under s. 44.02 (23) if the property is subject to a permanent easement, covenant or similar restriction running with the land and if that easement, covenant or restriction is held by the state historical society or by an entity approved by the state historical society and protects the archaeological features of the property.

Statutory analysis begins with an examination of the language of the statute itself to determine whether the

---

[1] Initially, this small claims action was to be decided by a one-judge panel. However, because it involves an issue of first impression, the chief judge ordered that it be decided by a three-judge panel. *See* RULE 809.41(3), STATS.

language is clear or ambiguous. *See De Bruin v. State*, 140 Wis. 2d 631, 635, 412 N.W.2d 130, 131 (Ct. App. 1987). If the language of a statute is clear, we must give effect to the plain meaning. *See DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 407–08, 321 N.W.2d 286, 288 (1982). Moreover, "[a] statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect." *Donaldson v. State*, 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980). Section 70.11(13m) clearly directs that property subject to an archaeological covenant be *exempt* from general property taxes.

The Wrases argue that the best interpretation of the statute—one which best effectuates the purpose of inducing property owners to protect archaeological sites—is to determine the value of the covenanted land and then subtract that from the value of the parcel as a whole. They attempt to use the exemption twice.

As proposed by the Wrases, § 70.11(13m), STATS., would not only allow for the exemption from taxation of the covenanted property, but would further reduce the property owner's remaining tax burden on the noncovenanted property. This is a disingenuous attempt to "double-dip" with the tax exemption. Section 70.11(13m) clearly does not provide such extensive relief for property owners. The covenanted land with the archaeological site *is* exempt from general property taxes—this is the benefit conferred upon property owners for agreeing to a restriction on certain property intended to protect archaeological sites. However, nowhere in the statute is it suggested that the value of the covenanted land can further reduce the remaining tax burden of the property owner. "An exemption from taxation must be clear and express. All presumptions

are against it, and it should not be extended by implication." *Janesville Community Day Care Ctr., Inc. v. Spoden*, 126 Wis. 2d 231, 233, 376 N.W.2d 78, 80 (Ct. App. 1985) (quoted source omitted).

In fact, the Wisconsin property assessment manual implies a result contrary to the Wrases' contention.[2] The Wisconsin property assessment manual provides the following guidance relating to archaeological sites:

> Section 70.11(13m), Stats., exempts archaeological sites . . . . This exemption applies to land only.
>
> . . . .
>
> **Note:** Properties where part is exempt due to an archaeological site *may not necessarily experience a reduction in total property value.* As with other property factors and market conditions, the market must be carefully analyzed to determine the effect on value. [Emphasis added.]

1 WISCONSIN DEP'T OF REVENUE, PROPERTY ASSESSMENT MANUAL FOR WIS. ASSESSORS 22–7. The manual specifically warns that property affected by an archaeological covenant may not experience a reduction in total property value.

The Wrases' position is that such property will always affect the total property value—it should always be subtracted from the total property value. This argument is directly contrary to the note in the assessment manual. We read the language in the man-

---

[2] Section 70.32(1), STATS., governs the valuation of real property and requires an assessor to value real property "in the manner specified in the Wisconsin property assessment manual" from actual view or the best information available. *See Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 632, 495 N.W.2d 314, 317 (1993) (quoted source omitted).

ual to say that if the archaeological site affects the value of the noncovenanted property, aesthetically or otherwise, a reduction in the assessment may be in order. But the fact that an archaeological site exists will not, by itself, demand a reduction in the assessed value of the remaining taxable property.

The Wrases concede that the covenanted land still contributes to the value of the remainder of the property, even though it is subject to the covenant—the property owners maintain their view of the water and have direct access to the lake from the property for swimming and boating. And under § 70.11(13m), STATS., the value of the covenanted land is exempt from general property taxes. Whether this actually reduces the total property value is dependent upon the property factors and market conditions. *See* 1 WISCONSIN DEP'T OF REVENUE, *supra* at 22–7. Because a tax exemption must be clear and express and because an exemption should not be extended by implication, *see Janesville Community Day Care,* 126 Wis. 2d at 233, 376 N.W.2d at 80, we reject the Wrases' proposed interpretation of the statute.

■

Nevertheless, the Wrases appear to contend that we should not interpret the manual as we have because to do so would be contrary to the legislative intent expressed in § 44.30, STATS. The statute provides in part:

> The legislature finds that the . . . archaeological . . . heritage of the state is among the most important assets of the state and . . . the social, economic and physical development of contemporary society threatens to destroy the remaining vestiges of this heritage. It is therefore declared to be the public policy and in the public interest of this state to

engage in a comprehensive program of historic preservation to promote the use and conservation of such property representative of both the rural and urban heritage of the state for education, inspiration, pleasure and enrichment of the citizens of this state.

*Id.* We do not agree that our interpretation of the manual is contradictory to the legislative goal expressed in the statute. The goal of promoting citizen dedication of archaeological sites is still met by the fact that the dedicating landowner will find the dedicated property exempt from taxation. This is a substantial impetus for the landowner to dedicate his or her property in and of itself.

*By the Court.*—Judgment affirmed.