IN RE the ESTATE OF Lucille F. JENSEN:

Jennifer L. SHEPPARD, Appellant,

v.

William P. JENSEN and Richard K. Hammill,
Respondents.

Court of Appeals

*No. 03–3431. Oral argument August 25, 2004.—Decided
October 13, 2004.*

2004 WI App 216

(Also reported in 689 N.W.2d 667.)

On behalf of the appellant, the cause was submitted on the briefs of and oral argument by *Mark R. Hinkston* of *Knuteson, Powers & Wheeler, S.C.* of Racine.

On behalf of the respondents, the cause was submitted on the brief of and oral argument by *Thomas W. Koss* of Union Grove.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J.   This case arises out of a conflict between a warranty deed and a will, both executed by the late Lucille F. Jensen. The deed conveyed certain

property to Jennifer L. Sheppard and William P. Jensen as tenants in common. The will purported to leave the same land, as well as the mobile home park business located on that land, to William and his brother Richard K. Hammill. The circuit court recognized Jennifer and William as co-owners of the real property but ruled that the business belonged to the brothers. Jennifer contends that, as half-owner of the real estate, she has a right to share in the income generated from the site rentals. We conclude that this position oversimplifies the realities of the situation. The income a mobile home park generates comes not merely from ownership of the land but from extensive personal efforts, oftentimes required by law, that the park operator takes to maintain and operate the park. This enterprise has the character of a business, and we decline to make Jennifer a de facto partner. We affirm the circuit court's ruling that she is entitled to collect from the business only her share of the property's fair rental value.

¶ 2. During her lifetime, Lucille owned two adjacent parcels of land on the south side of Highway 20, also known as Washington Avenue, in Racine county, located between West Road and Highway H. The smaller parcel, containing Lucille's personal residence, comprises 2.81 acres, on which she also ran a mobile home park. She called this enterprise Jensen's Mobile Home Village and operated it as a sole proprietor. The mobile home park houses twenty-seven mobile homes, some of which extend onto the larger, mostly unimproved parcel. Lucille owned two of these mobile homes, and the rest belonged to the park's tenants.

¶ 3. On June 18, 1998, Lucille conveyed, via a warranty deed, a remainder interest in fee simple in her real estate to her son William and her granddaughter Jennifer as tenants in common. She reserved to herself

a life estate and a special power of appointment, by which she could reconvey the property. Two and a half years later, on December 19, 2000, Lucille executed a will. The will attested that Lucille owned and operated as a sole proprietor a business known as Jensen's Mobile Home Village and owned the real property on which the business operated. It then gifted to her sons William and Richard both the business and the real property it occupied, 75% to William and 25% to Richard. The will also named William as personal representative of Lucille's estate.

¶ 4.  Lucille died on June 22, 2002, and on December 31, William, in his capacity as personal representative, petitioned the court for a construction of the will to resolve the inconsistency between the will and the 1998 warranty deed. The court held a hearing on the issue on February 7, 2003. It determined on the basis of *Lucareli v. Lucareli*, 2000 WI App 133, 237 Wis. 2d 487, 614 N.W.2d 60, that because the special power of appointment was repugnant to the deed, the deed controlled with respect to the transfer of real estate, and the attempt to reconvey it by will was invalid.[1]

¶ 5.  The circuit court did not, however, see any inconsistency in treating the business itself separately from the real estate. With respect to the mobile home park, it gave effect to the will, upholding a 75% share to William and a 25% share to Richard. Accordingly, it divided the business checking account and Lucille's two

---

[1] Following this ruling, Jennifer elected, pursuant to WIS. STAT. § 853.15 (2001–02), to forego a specific bequest of $20,000 in favor of the real estate the deed conveyed to her.

All subsequent references to the Wisconsin Statutes are to the 2001–02 version, unless otherwise indicated.

mobile homes in similar proportion. It reserved the issue of postdeath income for another hearing.

¶ 6.   The continued hearing took place on November 14. William maintained that the income the park generated was business income attributable to the efforts involved in operating the enterprise. He contended that to give Jennifer, in her capacity as a landowner, a share in that income would effectively make her a half partner in the business enterprise, frustrating Lucille's clear intention to leave the business only to her two sons. William agreed that Jennifer was entitled to income from the property but only to the extent of her share of the fair market rental value of the property. Similarly, Richard agreed that fair rental value was the proper amount due to Jennifer, on the theory that the estate's operation of the business on the land and Jennifer's acquiescence thereto created a tenancy at will.

¶ 7.   Jennifer responded that she did have a right to the income and expenses generated by the mobile home park because the mobile home park "business" was nothing more than the collection of rents for the use of property, property in which, based on the warranty deed, she had one-half ownership in fee simple following Lucille's life estate. Her argument was as follows:   The business' income came entirely from rents generated from the land the mobile homes occupied. Income from real property runs with the land and the right thereto is part of the bundle of rights, known as seizin, accompanying land ownership. Because the warranty deed had conveyed her the property as a tenant in common without expressly removing this particular stick from the bundle, Lucille did not reserve it to herself and could convey it to no one else via the will. The fact that Lucille ran the "business" during her

lifetime was immaterial because she had the right to do so by virtue of her life tenancy. Thus, Jennifer was entitled to participate in the rental of her property and to take her proportionate share of the income raised from the enterprise of doing so.

¶ 8. The circuit court reiterated that the will left a business to the brothers and accepted that the mobile home park income was a business asset severable from ownership of the real estate. It analogized the mobile home park operation to the growing of crops:

> I think the analogy made by Mr. Koss is a good one. This isn't a case where we have an apartment building on a piece of land. If there's a deed to that land, obviously the building transfers with the property. Here we have a trailer park. Lucille Jensen doesn't own the trailers—well, with the exception of the one, but the 27 or so trailers on the property were not owned by Lucille Jensen; they are owned individually by separate individuals, and can in fact be moved from the premises. So the analogy where a person owns land and a farmer is using that land to grow crops, the person growing the crops would certainly pay rent to the owner of the land, but the owner of the land would not be entitled to 50 percent of the value of the crops and the income generated from the crops.

The circuit court also accepted the respondents' tenancy at will argument and ruled that the estate owed Jennifer half of the fair rental value of the land.[2] It

[2] The court set a specific amount for fair rental value only for the period from Lucille's death until June 30, 2003. Because the court made clear that this amount would not be binding on any further proceedings and never addressed fair rental value subsequent to that date, such an amount has yet to be determined.

signed an order consistent with its ruling on December 12, following a hearing in which it denied Jennifer's motion to reconsider.

¶ 9.   The facts in this case are undisputed. All parties agree that Jennifer has a 50% interest in the real estate on which the park is located. The record further reflects that before Lucille's death, she owned and operated Jensen's Mobile Home Village as a sole proprietor and invested various capital and personal efforts in operating and managing the park. The park not only had a bank account, it had an office and office equipment. Lucille kept records, and her personal residence was readily accessible to the park, located as it was on the same parcel of land.

¶ 10.   Following Lucille's death and into the first months of 2003, William devoted roughly fifty hours each month to various problems involved in maintaining and operating the park. He represented to the circuit court that he had to spend time executing new annual leases with all the tenants, collecting back rent, replacing delinquent tenants, and cleaning up the property. He also represented that he now spends roughly thirty hours per month on maintenance, including snow removal and lawn mowing chores.

¶ 11.   The parties dispute not the facts but what meaning we ought to ascribe to them—namely, whether the rental income generated by Jensen's Mobile Home Village runs with the land, as in ordinary land rental situations or whether its source is rather the active management and operation of a business, such that it qualifies as business income. When a case presents but one account of the facts and the parties merely dispute the applicable rules of law to that factual account, we have a question of law. *Megal v. Green Bay Area Visitor*

& *Convention Bureau, Inc.*, 2003 WI App 230, ¶ 12, 267 Wis. 2d 800, 672 N.W.2d 105, *aff'd in part and rev'd in part by* 2004 WI 98, 274 Wis. 2d 162, 682 N.W.2d 857; Clarence Morris, *Law and Fact,* 55 Harv. L. Rev. 1303, 1314–15 (1942) (citing Holmes, *Law in Science and Science in Law,* 12 Harv. L. Rev. 443 (1899)). We review such questions de novo. *Park Bank-West v. Mueller,* 151 Wis. 2d 476, 482, 444 N.W.2d 754 (Ct. App. 1989).

¶ 12.   The respondents urge upon us the example of a widget factory operating on the premises. Certainly, that scenario is more clear-cut than the situation presented here, where the issue becomes clouded by the fact that the profits of the business are also rental income. Jennifer points out that what is being rented are her plots of land. She asserts that a mobile home park is simply a parcel of land with two or more of these rented plots, often called "pads." Thus, she asserts we should consider the park and the income therefrom as part of the real estate.

¶ 13.   Jennifer's argument is neither far-fetched nor without intuitive appeal; it is simply too facile, however. It utterly discounts all of the facts in the record relating to Lucille's and William's extensive personal efforts to·operate and manage the land. She concludes that they mean nothing. We disagree. We hold that the circuit did not err in treating Jensen's Mobile Home Village more like the hypothetical widget factory than like the mere renting out of a room, in which the landlord periodically collects rent and otherwise is largely absent from affairs on the premises. The court's crop-raising analogy properly recognized that like the growing of crops, the operation of a mobile home park demands the investment of time, money and labor. It is a business.

¶ 14. Several legal sources have acknowledged or described various personal efforts a mobile home park operator might encounter in the operation of his or her park. In *Yee v. City of Escondido*, 503 U.S. 519, 523 (1992), the United States Supreme Court described some of the conveniences and amenities that the owner of a mobile home park provides for tenants: "The park owner provides private roads within the park, common facilities such as washing machines or a swimming pool, and often utilities. The mobile home owner often invests in site-specific improvements such as a driveway, steps, walkways, porches, or landscaping."

¶ 15. Our administrative code confirms that mobile home parks in Wisconsin often conform to *Yee*'s description. WISCONSIN ADMIN. CODE § Comm 95.09(1)(c)1 (2004)[3] refers to such structures as pump houses, recreational and laundry facilities, and office buildings for the park and provides that no unit shall be located within ten feet of such a structure. Section Comm 95.09(1)(c)3 extends its prohibition to the right of way line of any street within the park. Moreover, § Comm 95.09(3) provides detailed specifications for roadways within a park. They must conform to width requirements, have adequate lighting at night, and be graveled or paved. Also, WIS. ADMIN CODE § ATCP 125.04(1)(c) allows a park operator to charge tenants for material and labor costs associated with moving mobile homes into or out of the park. According to *Yee*, these moving expenses represent a large fraction of a mobile home's value. *See Yee*, 503 U.S. at 523.

---

[3] All references to the Wisconsin Administrative Code are to the 2004 version unless otherwise indicated.

¶ 16. In addition to the expenditures that park owners might incur in providing the above amenities, they must comply with state licensing requirements and pay various fees. They cannot lawfully maintain or operate their parks until they obtain a license from their city, town or village, Wis. Stat. § 66.0435(2)(a), which they must renew annually, § 66.0435(3)(a), (6). Fees that the licensing authority alone might charge include a fee for the annual license, § 66.0435(3)(a); a fee for any transfer of license, subsec. (3)(b); and a monthly parking fee for each mobile home unit, subsec. (3)(c). With respect to the last, the park owner essentially remains a surety for the mobile home owner, and the licensing authority may even require the park owner to collect the fee. *See* § 66.0435(3)(c)6. State law provides no reimbursement to park owners for 98% of any collection costs they might incur in collecting parking fees. *See* § 66.0435(3m).

¶ 17. Wisconsin statutes and regulations also amply demonstrate that state law requires mobile home park operators to operate and maintain their parks in various ways.[4] For example, state law requires all rental agreements to be by lease, Wis. Stat. § 710.15(1m), and in writing, Wis. Admin. Code § ATCP 125.03(1). Further, two chapters of the Wisconsin Administrative Code apply exclusively to mobile home parks. Chapter 95 of the Department of Commerce regulations includes re-

---

[4] Perhaps because of extensive state regulation, one commentator has characterized mobile home park operation as a regulated industry. *See* LaVonda N. Reed-Huff, *Are You Still Settling For Cable? A Case for Broader Application of the FCC's Over-The-Air Reception Devices Rule,* 26 Hastings Comm. & Ent. L.J. 179, 228–29 (2004) (arguing the regulated nature of the mobile home park industry explained *Yee's* rejection of petitioners' takings clause challenge to a rent control ordinance).

quirements for electricity, WIS. ADMIN. CODE § Comm 95.13, specifications for acceptable garbage receptacles, § Comm 95.14, and management requirements, § Comm 95.15. The last, in particular, directs park operators to exert extensive personal efforts. It not only holds them responsible for maintenance of the park, it requires them to be *available* in the park or in close proximity to the park during reasonable hours. Sec. Comm 95.15(1).

¶ 18. WISCONSIN ADMIN. CODE ch. 186 of the Public Service Commission regulations, entitled Water or Sewer Service in Mobile Home Parks, is the other chapter of code regulations exclusively devoted to regulating mobile home parks. WISCONSIN ADMIN. CODE § PSC 186.21 imposes record-keeping requirements on park operators. It requires them to keep records for three years of any water or sewer outage lasting more than one hour or affecting 25% or more of the park's occupants. WISCONSIN ADMIN. CODE §§ PSC 186.71 and 186.72 regulate water quality and supply. The former governs the quality of the water, while the latter directs the park owner to furnish park occupants with a continuous and adequate water supply. WISCONSIN ADMIN. CODE § PSC 186.76(2) obligates park owners to maintain water and sewer laterals at their own expense.

¶ 19. Obviously, these myriad sources reveal that park owners may, and often must, incur expenses from buying or leasing equipment (*e.g.*, moving trucks, outdoor lighting fixtures), materials (*e.g.*, gravel, cement), and human capital (*e.g.*, movers, construction crews, office staff). They also must pay licensing fees, incur other financial risks and liabilities, and assume other personal obligations. Expenses of this nature are common in the operation of a business. Jensen's Mobile Home Village incurred such obligations simply by vir-

tue of being a mobile home park. The circuit court's determination that the rental income from the mobile home park was business income had clear support.

¶ 20. The undisputed facts of this case are consistent with the picture one can draw from the various statutes and regulations of mobile home park operation as a business. Lucille had both an office and a personal residence on the property. In either place, she would have fulfilled her legal responsibility to be available in or in close proximity to the park. She also kept records, so the circuit court could have concluded that she actually used the office for business purposes. Further, William was clearly performing the maintenance functions required of him by law when he engaged in lawn mowing and shoveling snow.

¶ 21. Having determined that the income from the mobile home park business was business income and not income attributable to ownership of land, we conclude that Jennifer has no interest in the business. Lucille's will bequeathed her none. Moreover, Jennifer does not contend that she meets the legal criteria necessary to claim partnership in the business. *See Skaar v. DOR*, 61 Wis. 2d 93, 98–99, 211 N.W.2d 642 (1973) (four criteria necessary to form a partnership; *First Nat'l Bank of Kenosha v. Schaefer*, 91 Wis. 2d 360, 373, 283 N.W.2d 410 (Ct. App. 1979) (burden on party asserting a partnership exists to make prima facie case). The only basis on which she purports to have a right to the business income is in her capacity as landowner, and the Wisconsin Legislature has unequivocally rejected the notion that mere co-ownership of land creates an implied partnership. *See* WIS. STAT. § 178.04(2); *Skaar*, 61 Wis. 2d at 100.

¶ 22. Finally, we agree with the circuit court's determination that the continued operation of Jensen's Mobile Home Village on the real property created a tenancy at will, entitling Jennifer to her proportionate share of the property's fair rental value. In determining the type of tenancy involved in the present case, we must apply the facts to the applicable landlord/tenant statutes. This is a question of law which we review de novo. *See Park Bank-West*, 151 Wis. 2d at 482. WISCONSIN STAT. § 704.01(5) defines a tenant at will as a tenant without a valid lease who occupies land with the landowner's permission and under circumstances not involving the periodic payment of rent. That definition clearly fits the facts of this case. Jennifer has never objected to the business carrying on operations on her property, has never entered a lease with the business, and does not receive periodic rental payments. Jennifer has not argued that her proportionate share of the property's fair rental value is inadequate compensation for a tenancy at will, so we affirm that measure of remuneration.

¶ 23. We hold that the circuit court had ample reason to conclude that Jensen's Mobile Home Village was a business, the income from which resulted from extensive personal efforts by Lucille and later William to operate and maintain the premises, oftentimes pursuant to legal mandates. Thus, it was proper to treat the circumstances of this case like the respondents' widget factory scenario. Jennifer's position, while certainly not unreasonable, simply ignores the reality of the additional personal exertions, financial risks, and capital required to successfully manage and operate a mobile home park. We further hold that because Jennifer has consented to the business' presence on her

property, the business is a tenant at will and owes her half of the premises' fair rental value.

*By the Court.*—Order affirmed.