**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 27, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP1407**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022SC6330

**IN COURT OF APPEALS
DISTRICT I**

BOOKER GUTTER,

    PLAINTIFF-RESPONDENT,

  V.

MARGARET GUTTER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: CYNTHIA M. DAVIS, Judge. *Affirmed*.

¶1 WHITE, C.J.[1] Margaret Gutter appeals the judgment of replevin granted in favor of Booker Gutter for the return of a number of items of personal

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

property and the dismissal of Margaret's counterclaim seeking damages related to the storage of Booker's property. Margaret argues that the circuit court lacked subject matter jurisdiction, that she was denied due process, and that the circuit court's conclusion is not supported by the facts in the record. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

¶2      On March 9, 2022, Booker commenced this case in the Milwaukee County Circuit Court small claims division seeking the return of a number of items of personal property held by his mother, Margaret.[2] Booker alleged that he had been living in a house owned by his parents. In September of 2021, about a month before his father died from a prolonged illness, Booker alleged that Margaret, through her counsel, requested that Booker move out by the end of the month. However, prior to the deadline Margaret moved Booker's remaining belongings to a storage unit and changed the locks on the house. Booker repeatedly requested his property returned, but Margaret refused to do so unless Booker paid Margaret money owed for rent which Booker denied owing.

¶3      Margaret answered and counterclaimed that Booker had refused to move his property from the home for months after he was initially asked to vacate in July 2021, and that Booker owed Margaret a total of $24,150.07 for the cost of

---

[2] Booker alleged that Margret refused to return the remains of his son's mother, "medicines, medical supplies, money, [two] snow blowers, [two] refrigerators, [two] dorm refrigerators, [one] washer, [one] dryer, [one] lawnmower, [one] television, [two] beds, tools, yard equipment, sports equipment, [one] bike, clothing, toys, electronics, jackets and coats, hats, shoes, lamps, toiletries and cleaning supplies, [one] kitchen countertop, [one] dishwasher, [one] safe, and a kitchen garbage disposal."

moving and storing his property, cleaning the home, unpaid utilities, and past rent.[3]

¶4 At an August 17, 2022 hearing, the circuit court addressed Margaret's counterclaim. Margaret indicated that she wanted to pursue her counterclaim for a higher amount of monetary relief than can be considered in small claims, so the circuit court dismissed the counterclaim and instructed Margaret to pay the required filing fee to reassign the case to large claims. At a status conference the following week, Margaret indicated that she still wished to pursue her counterclaim and requested an adjournment to pay the filing fee. The circuit court granted the adjournment and set a deadline of September 7, 2022, for Margaret to pay the filing fee. Margaret failed to pay the filing fee by the next court date on November 8, 2022, so the circuit court stated that Margaret's counterclaim would remain dismissed.

¶5 On January 31 2023, Margaret filed her Second Amended counterclaim renewing her request for the circuit court to award more relief than is allowed under small claims procedure. At the hearing the next day, the circuit court addressed the renewed counterclaim. The circuit court told Margaret, "So, you still have the opportunity. If you want to, again, like we discussed last time. You can file that [counterclaim] in large claims." The circuit court also told Margaret that she could agree to limit her counterclaim to $5,000 if she wanted the circuit court to address it in small claims. Margaret indicated that she still wanted

---

[3] Margaret filed an amended counterclaim on August 15, 2022, indicating that she also sought monetary relief related to unpaid utility bills.

more relief than is allowed under small claims procedure, so her counterclaim was dismissed.

¶6 On June 28, 2023, the circuit court held a hearing where the parties presented their testimony. During the first half of the hearing, Margaret moved the circuit court to address her counterclaim again. Booker objected on the ground that the parties had not finished presenting the relevant testimony and the circuit court sustained the objection.

¶7 On July 12, 2023, Margaret moved for a continuance of the July 13, 2023 hearing arguing that the transcript of the June 28, 2023 hearing was not available yet and was needed for impeachment purposes. The circuit court denied the motion. The parties then finished presenting testimony and the circuit court adjourned the hearing for final arguments and its decision.

¶8 On July 18, 2023, the circuit court granted a judgment of replevin in favor of Booker for all of the personal property he requested except for the oven, refrigerator, and washing machine. In coming to its decision the circuit court determined that: (1) Booker failed to prove that he owned the oven, refrigerator, and washing machine; (2) Booker was a tenant at will under WIS. STAT. § 704.01(5); (3) Booker did not surrender or abandon his property because Booker did not vacate the house; (4) Margaret was not entitled to hold Booker's property because Booker had not been properly evicted at the time Margaret took his property and placed it into storage due to Margaret failing to notify Booker in the manner required by WIS. STAT. §§ 704.19(4) and 704.21(1); and (5) Booker owed no expenses to Margaret since he was never properly evicted.

¶9 Margaret appeals. Additional relevant facts are discussed below.

**DISCUSSION**

¶10    Margaret argues that the circuit court lacked subject matter jurisdiction over the case because her counterclaim sought damages greater than the statutorily prescribed $5,000 limit for small claims procedure and that this issue cannot be waived.[4]  However, the circuit court had subject matter jurisdiction regardless of whether the amount in controversy exceeded the statutory limit for small claims procedure.

¶11    Under Article VII, § 8 of the Wisconsin Constitution, circuit courts have "original jurisdiction in all matters civil and criminal"; therefore, "a circuit court is almost never without subject-matter jurisdiction[.]" *Walworth County v. M.R.M.*, 2023 WI 59, ¶17, 408 Wis. 2d 316, 992 N.W.2d 809.   Instead, "noncompliance with statutory requirements pertaining to the invocation of that jurisdiction" can result in the loss of the circuit court's competency to exercise its subject matter jurisdiction.  *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶2, 273 Wis. 2d 76, 681 N.W.2d 190.  *See also* *Mueller v. Brunn*, 105 Wis. 2d 171, 177, 313 N.W.2d 790 (1982) ("[T]here is lack of competency for excess sums where a court has the power to deal with an action but for no more than a designated amount"), *abrogated on other grounds by Mikrut*, 273 Wis. 2d 76, ¶29.

¶12    "The concept of competency has been characterized as a 'narrower concept' involving a 'lesser power' than subject matter jurisdiction." *Mikrut*, 273 Wis. 2d 76, ¶14.   "A judgment rendered under these circumstances may be

---

[4] WISCONSIN STAT. § 799.01 provides that small claims procedure is "the exclusive procedure to be used" for "[a]ctions for replevin … where the value of the property claimed does not exceed $10,000," and "actions based in tort, where the amount claimed is $5,000 or less." Sec. 799.01(1)(c), (cr).

erroneous or invalid because of the circuit court's loss of competency but is not void for lack of subject matter jurisdiction." *Id.*, ¶2. Unlike subject matter jurisdiction, "challenges to the circuit court's competency are waived[5] if not raised in the circuit court." *Id.*, ¶30.

¶13 Therefore, it is clear that the circuit court had subject matter jurisdiction over this case regardless of the amount in controversy.

¶14 Relatedly, Margaret argues that she never waived the issue regarding the circuit court's jurisdiction because she told the circuit court she wanted to pursue her counterclaim in the large claims division and that she paid the filing fee to do so. As a result, Margaret also maintains that the circuit court's August 8, 2023 order denying her post-trial motion to transfer to large claims was erroneous because it relied on a finding that Margaret had failed to timely pay the large claims filing fee. However, after reviewing the record, we note that the evidence does not support that Margaret ever paid the filing fee and we, therefore, conclude that Margaret forfeited her right to transfer the case to large claims.

¶15 Margaret indicated to the circuit court multiple times that she wanted to pursue a counterclaim greater than the limit for small claims procedure, and in response the circuit court also informed her multiple times that she either needed to pay the filing fee to do so or limit the amount of damages she was claiming. The circuit court set a September 7, 2022 deadline for her to file with large claims if she wished to pursue a counterclaim outside of small claims.

---

[5] "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted).

¶16    Even after the deadline had past, on February, 1, 2023, Margaret still maintained that she wanted her counterclaim heard outside of small claims and the circuit court gave her another opportunity to do so and stated that, "If you want to, again, like we discussed last time. You can file that [counterclaim] in large claims."[6] The CCAP[7] record is devoid of any entry indicating that she ever paid the required large claims filing fee.[8] There is also no evidence in the record, like a receipt, that shows that Margaret paid the filing fee as she claims she did.

¶17    On July 18, 2023, the circuit court started its decision by explaining that the issue before the court was Booker's replevin claim; however, it would also address Margaret's counterclaim because the counterclaim related to damages from the disposition of Booker's property which would necessarily be resolved by deciding the replevin claim. The circuit court ultimately determined that Booker was a tenant at will, never vacated the property, and had not been properly evicted. Consequently, Booker could not owe any costs to Margaret related to the disposition of his property because she was never entitled to hold his property.

---

[6] Subsequently, on June 28, 2023, Margaret moved the circuit court to address her counterclaim; however, the details of Margaret's motion and whether she limited her counterclaim are not part of the record submitted to this court.

[7] Wisconsin's CCAP (Consolidated Court Automation Programs) is a case management system provided by the Wisconsin Circuit Court Access program, which "provides public access online to reports of activity in Wisconsin circuit courts." *State v. Bonds*, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133. "The online website reflects information entered by court staff." *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522. We may take judicial notice of CCAP records. *See* WIS. STAT. § 902.01; *Kirk*, 346 Wis. 2d 635, ¶5 n.1, 829 N.W.2d 522.

[8] Margaret points to the existence of Milwaukee County Circuit Court Case No. 2022CV5466 to support that she paid the filing fee. The CCAP record indicates that this case was closed before any claims were litigated. Notably, this record also does not contain an entry showing that Margaret paid the requisite large claims filing fee.

Notably, Margaret did not object to the circuit court's consideration and dismissal of her counterclaim during the trial.

¶18     Margaret claims that the circuit court confirmed that the filing fee was paid at the November, 8, 2022 status conference.  However, the CCAP record for this hearing only shows that the circuit court dismissed Margaret's counterclaim, it does not indicate that any filing fee was paid or that the case would be transferred to large claims.  Margaret failed to submit the transcript of the November 8, 2022 hearing to support her claim.  Therefore, in the absence of evidence showing the contrary, we must assume that the material in the transcript supports the circuit court's ruling.  *See* ***Gaethke v. Pozder***, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("It is the appellant's responsibility to ensure completion of the appellate record and when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling.").

¶19     Ultimately, Margaret's mere claim that she paid the filing fee is insufficient proof for this court to find erroneous the circuit court's August 8, 2023 order finding that she had not paid the fee.  We conclude that Margaret forfeited her opportunity to have the case reassigned to the large claims division by failing to pay the filing fee.

¶20     Margaret also argues that she was denied due process because: (1) the court trial took place on five different days over the course of about five and a half months; and (2) she did not have access to the transcript for the June 28, 2023 hearing prior to the hearing on July 13, 2023, because the circuit court denied her motion for a continuance.

¶21    Margaret cites to no relevant legal authority in support of her assertion that her right to due process was violated because the replevin hearings took place on five different days over the course of about five and a half months. Instead Margaret cites solely to *Lipeles v. Flood*, 69 Wis. 2d 413, 230 N.W.2d 722 (1975), arguing that her due process rights were denied because this case presents the opposite situation of the one found in *Lipeles*. Specifically, Margaret points to our supreme court's holding that due process was not denied when the circuit court scheduled a trial sooner than originally planned for in the pretrial report. *See id.* at 418.

¶22    It is unclear how this holding supports her argument and Margaret does not elaborate. In *Lipeles*, our supreme court's holding was based on the fact that changing the trial date was not a surprise, and was instead done "for the convenience of the [appellants] … and [that] the record show[ed] that the [appellants] acquiesced in the completion of the trial on that date." Therefore, the *Lipeles* court concluded that "[a]ny possible objection was specifically waived." *Id.*

¶23    The facts of this case are not truly opposite to those in *Lipeles*; rather, as Booker points out, they are strikingly similar in some ways. Margaret does not dispute that she had notice of each of the five scheduled hearings, nor did she object when the circuit court initially scheduled them. Furthermore, some of the delays were to Margaret's benefit. For example, at the February 1, 2023 hearing the circuit court granted Margaret an adjournment to brief her argument that Booker abandoned his property, and at the March 24, 2023 hearing the circuit court gave the parties time to attempt to reach a resolution between themselves. Ultimately, Margaret's argument is undeveloped and not supported by relevant legal authority; therefore, we decline to address it further. *See Wisconsin Conf.*

***Bd. of Trs. of United Methodist Church, Inc. v. Culver***, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (explaining that due to the complicated nature of constitutional claims we do not decide these issues when they are inadequately briefed).

¶24    Regarding Margaret's other due process argument, she cites solely to ***Petitioner v. Garland***, No. 2020AP1695 unpublished slip op. (WI App Jan. 11, 2022), to argue that she had a due process right to the transcript of the June 28, 2023 hearing prior to the next scheduled hearing.  ***Garland*** is an unpublished *per curium* opinion and *per curiam* opinions "may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case[.]"  WIS. STAT. RULES 809.23(3)(a), (b). Margaret does not cite ***Garland*** for one of these permissible reasons.  We remind counsel that we expect compliance with the rules of appellate procedure and decline to address to Margaret's argument.  *See* RULE 809.23(3)(b) ("A court need not distinguish or otherwise discuss an unpublished opinion[.]"); ***State v. Pettit***, 171 Wis. 2d 627, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."); *see also* ***Tamminen v. Aetna Cas. & Sur. Co.***, 109 Wis. 2d 536, 563-64, 327 N.W.2d 55 (1982) (imposing a $50 penalty on the attorneys for citing an unpublished court of appeals opinion in violation of the rules of appellate procedure).

¶25    Next, Margaret challenges the sufficiency of the evidence supporting the circuit court's determination that Booker was a tenant at will under WIS. STAT. § 704.01(5), that Booker did not abandon his personal property, and that Margaret was not owed any damages.  Instead, Margaret claims that the evidence only supports that Booker was a trespasser who surrendered his property and that Margaret is entitled to the expenses incurred in removing and storing the property.

¶26 Whether Booker was a tenant at will is a question of law that we review independently. *Sheppard v. Jensen*, 2004 WI App 216, ¶22, 277 Wis. 2d 260, 689 N.W.2d 667. A tenant at will is "any tenant holding with the permission of the tenant's landlord without a valid lease and under circumstances not involving periodic payment of rent[.]" WIS. STAT. § 704.01(5).

¶27 We will not disturb the circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). Furthermore, this court does not review questions regarding the weight of testimony and credibility of witnesses. *Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980). "These are matters to be determined by the trier of fact and their determination will not be disturbed where more than one reasonable inference can be drawn from credible evidence." *Id.* at 151. "We will search the record for evidence to support the findings that the [circuit] court made, not for findings that the [circuit] court could have made but did not." *Global Steel Prod. Corp. v. Ecklund*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269.

¶28 The circuit court explained that, based on the evidence, Booker was a tenant at will, not a trespasser. The circuit court discussed Booker's testimony that his father had given him permission to live in the house, that Booker had keys to the property, that Booker maintained the property, that Booker's father would come by to check on him and the house, and that no action had been taken to remove Booker until he had been living there for about two years. The circuit court emphasized that "it's hard to believe, and entirely incredible, that [Booker] could live there that long, for two years, if he didn't at least have the implicit permission of the landlord."

¶29 The circuit court also discussed the evidence and testimony presented by Margaret and found that Booker's testimony was more credible. The circuit court addressed the unpaid utility bills that Margaret had submitted and found that they did not refute Booker's testimony that he only paid the utility bills for the lower unit because the unpaid utility bills were solely for the upper unit. The circuit court also discussed how Margaret's testimony conflicted with facts in her counterclaim and that those facts supported that there was a landlord-tenant relationship. Thus, the circuit court determined that Booker was a tenant at will.

¶30 The circuit court then moved on to analyze whether Margaret properly evicted Booker as a tenant at will. The circuit court explained that Booker never gave notice that he was terminating his tenancy and that none of the evidence presented by Margaret regarding possible eviction notices could qualify as the twenty-eight day written eviction notice required to evict tenants at will under WIS. STAT. § 704.19. Thus, the circuit court concluded that Booker had not been properly evicted and consequently did not owe any money to Margaret related to her storage of Booker's property because Margaret had never been entitled to hold it.

¶31 To the extent that Margaret argues that the evidence she presented was more credible than Booker's evidence, we defer to the circuit court's credibility findings. *See Johnson*, 95 Wis. 2d at 151-52. Furthermore, our review of the record shows that the evidence the circuit court relied on is sufficient to support its determination and that the court's factual findings are not clearly erroneous. *See Global Steel Prod. Corp.*, 253 Wis. 2d 588, ¶15.

¶32 Margaret also argues that even if Booker was a tenant at will then she is still entitled to expenses under WIS. STAT. § 704.05(5)(c). Under

§ 704.05(5)(c) the landlord only has the power to dispose of "property left on the premises by the tenant," and is entitled to expenses related to the disposition of that property. *See also* Sec. 704.05(5)(a)1. As discussed above, the circuit court found that Booker neither vacated nor was properly evicted from the house; therefore, Margaret is not entitled to the costs of disposing his property because Booker never abandoned his property at the house.

¶33 Finally, Margaret challenges the sufficiency of the evidence supporting the circuit court's finding that Booker owned the dryer. "[W]hich party is entitled to possession of the disputed property becomes the ultimate fact question in a replevin action." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 468, 405 N.W.2d 354 (Ct. App. 1987). The plaintiff bears the burden of proving ownership. *First Nat. Bank of Glendale v. Sheriff of Milwaukee Cnty.*, 34 Wis. 2d 535, 538, 149 N.W.2d 548 (1967). *See* WIS. STAT. §§ 810.02(1), 810.13(1)(a).

¶34 The circuit court found that Booker proved that he owned the dryer because he testified that he purchased it and Margaret offered no contradictory testimony. Margaret maintains that the move-out letter written by Megan Haak, Booker's ex-wife who rented the house until October 31, 2018, constitutes contradictory evidence that the circuit court should have relied on. Haak's letter briefly addressed the appliances that she had replaced while she was living there. Specially, Haak stated that "[a]ll appliances, including a brand-new oven, a refrigerator, and a new washing machine will remain. All furniture and other items belonging to your son, Booker, will remain on the premises on as well."

¶35 The circuit court explained that it "found that the letter really wasn't helpful one way or the other…. There's no indication, of one way or the other

really who's that the replacement items were; who was supposed to own the replacement items." It was reasonable for the circuit court to infer that Haak's letter failed to indicate who owned the dryer because the phrasing and context of Haak's letter does not necessarily mean that Booker did not own the dryer like Margaret suggests it does. *See Global Steel Prod. Corp.*, 253 Wis. 2d 588, ¶10 ("It is not within our province to reject an inference drawn by a fact finder when the inference drawn is reasonable."). Thus, the circuit court's finding—based on Booker's testimony that he owned the dryer because he had bought it—was not "against the great weight and clear preponderance of the evidence." *See Phelps v. Physicians Ins. Co. of Wisconsin*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted).

## CONCLUSION

¶36 We conclude that the circuit court had subject matter jurisdiction, that Margaret was not denied due process, and that the evidence sufficiently supports the circuit court's determinations.

*By the Court.*—Judgment affirmed

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14